IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 25, 2021 Session

**STATE OF TENNESSEE v. MICHAEL BROWN**

**Appeal from the Criminal Court for Knox County**
**No. 117748   Kyle A. Hixson, Judge**

**No. E2020-01392-CCA-R3-CD**

FILED

JAN 2 5 2022

Clerk of the Appellate Courts
Rec'd by_____

The Appellant, Michael Brown, pled guilty in the Knox County Criminal Court to two counts of aggravated assault, a Class C felony. Pursuant to the plea agreement, he received an effective six-year sentence with the trial court to determine the manner of service of the sentence, including his request for judicial diversion. After a sentencing hearing, the trial court denied diversion and ordered that he serve the sentence in confinement. On appeal, the Appellant contends that the trial court erred by denying his requests for judicial diversion and full probation. Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and JILL BARTEE AYERS, JJ., joined.

Jonathan Harwell (on appeal) and Patrick Leonard (at hearings), Knoxville, Tennessee, for the appellant, Michael Brown.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Charme P. Allen, District Attorney General; and Heather Good, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

On July 28, 2020, the Appellant was charged by information with two counts of aggravated assault with a deadly weapon. That same day, he pled guilty to the offenses. Pursuant to the plea agreement, the Appellant was to receive concurrent six-year sentences

as a Range I, standard offender with the trial court to consider his application for judicial diversion and the manner of service of the sentences.

At the guilty plea hearing, the State gave the following factual account of the crimes:

Your Honor, had this case proceeded to trial, the witnesses listed would testify that on Saturday May the 30th, 2020, at approximately 1:28 a.m., [on] Shamrock Road, officers were dispatched [to a home] in regards to a domestic dispute.

When officers arrived they observed the victim Martha Brown running away from the residence approximately a block away because she was in fear for her life. When officers spoke with Ms. Brown, she was distraught. She had abrasion[s] on her left leg from stumbling away from the scene.

Once they approached the home they received -- as they were approaching the home, officers received an update that the suspect, defendant Michael Brown, was inside of the bathroom of the home attempting to clean blood off of his person.

When they got to the home, they came in contact with victim Jerry Brown. When he opened the door they could observe Mr. Brown's clothes were drenched in blood. He had blood emitting from his arm and -- arms and head. He had serious wounds to the head. He wasn't clearly able to process what officers were telling him at first.

Mr. Brown did tell officers that he was asleep in bed with his wife, Martha Brown, when he heard the defendant -- who is their son -- walking toward the bedroom. Mr. Jerry Brown stated that the defendant walked in his room, grabbed one of Mr. Jerry Brown's handguns. Jerry Brown asked the defendant what he was doing, at which point the defendant stated that, "It's time for you and Mom to go."

And then proceeded to point the handgun at both Jerry Brown and Martha Brown while they were in bed. However, the gun did -- did not go off, although he did pull -- although the defendant did pull the trigger, no bullets were fired. Apparently there was something lodged in the gun that prevented it from firing.

Mr. Jerry Brown then got into a struggle with the defendant trying to get the gun away from him. After the gun was taken from him, the defendant retrieved a wooden axe handle and another struggle ensued between the

- 2 -

defendant and Jerry Brown, but Jerry Brown was, was struck with the axe handle in the head and arms during, during the altercation. And [the] firearm was noted to be on scene along with other firearms by the officers and these all did occur in Knox County.

At the conclusion of the plea hearing, the trial court accepted the Appellant's guilty pleas and sentenced him to the agreed effective sentence of six years.

On September 24, 2020, the trial court held a sentencing hearing to consider the Appellant's requests for judicial diversion and full probation. At the outset of the hearing, the State introduced into evidence a report from the Tennessee Department of Correction, which concluded that the Appellant could not be recommended for enhanced probation "due to the alarming circumstances of this case." The State also introduced into evidence the Appellant's presentence report, which included a Strong-R assessment and a victim impact statement; photographs of Mr. Brown's injuries; photographs of the crime scene; and Mr. Brown's medical records from May 30, 2020.

According to the presentence report, which was prepared in August 2020, the then fifty-three-year-old Appellant had been divorced twice and had one son from his first marriage. The Appellant stated in the report that he graduated from the University of Tennessee with a degree in business in 1995. He described his mental and physical health as "good" but said he suffered from depression and Crohn's disease for which he had been prescribed several medications. According to the report, the Appellant began using alcohol and marijuana when he was sixteen years old. However, at the time of the presentence report, he had not consumed alcohol since May 2020 and had not used marijuana in six months. The Appellant used cocaine about twelve times when he was twenty years old. In 2016, he had suicidal thoughts due to a medication he was taking and spent one week in St. Mary's Hospital. In 2018, he voluntarily entered an outpatient alcohol treatment program for three months but quit prior to completing the program.

In the report, the Appellant said that he had a "great" relationship with his parents as a child and that he had a "good" relationship with them just prior to the assaults. He stated that he was taking Ambien at the time of the assaults, that the Ambien caused him to blackout during the incident, and that he did not have any memory of assaulting the victims. The Appellant stated in the report that he worked as a safety coordinator for Commercial Steel Erection in Virginia from March 2020 to April 2020 and as an "EHS Lead" for Hanwha Azdel, Inc., in Virginia from January 2016 to January 2019. The Appellant said that he also worked for Rock-Tenn for more than twenty-nine years and that he left his jobs with Rock-Tenn and Hanwha Azdel due to his moving to another state. The report showed that he had no prior criminal history. The Appellant's Strong-R assessment classified his overall risk to reoffend as moderate and concluded that he had high needs relevant to "Residential" and "Family"; moderate needs relevant to "Aggression"; and low

needs relevant to "Friends," "Attitudes/Behaviors," "Mental Health," "Alcohol/Drug Use," "Employment," and "Education."

The record reflects that at the time of the assaults, the Appellant was fifty-three years old and the victims were seventy-three years old. In the victim impact statement, which was signed by both of the victims, Jerry Brown recounted what occurred on the night of the crimes. His account was similar to the facts presented at the plea hearing. Additionally, Mr. Brown stated that that the Appellant had verbally abused Mrs. Brown, that the Appellant had "a pattern of dominance" and "aggressiveness," and that Mr. and Mrs. Brown were "terrified" the Appellant would try to kill them again. Mr. Brown said that Mrs. Brown "will not leave my side out of fear" and requested that the Appellant serve his sentence in confinement so they could feel safe.

During the sentencing hearing, the State requested that Mr. Brown be allowed to give an oral "victim impact statement." The trial court declared the proof "closed" but said that "we'll consider victim-impact statements at this time." The court then allowed Mr. Brown to "address the Court." [1] Mr. Brown stated that the Appellant would be "better off" in prison because "[i]t gives him a place to stay, a place to eat. He can get therapy there. He's, he's not near what he seems when he's talking to you." Mr. Brown said the Appellant tried to commit suicide when the Appellant was "younger," so Mr. Brown "put him in St. Mary's." When the Appellant was released from the hospital, he "spent quite a bit of time with psychologists." Mr. Brown stated that the Appellant "says he knows the answers they are looking for" and that Mr. Brown thought the Appellant was going to try to "get even" with Mr. and Mrs. Brown when the Appellant was released from confinement. Mr. Brown said he and his wife "walk[ed] around scared to death of every noise."

Mr. Brown said that the Appellant had alcohol and drug problems and that one employer fired the Appellant for "'drinking on the job.'" On the night of the assaults, the Appellant loaded Mr. Brown's gun. Mr. Brown stated, "I think he was trying to make it look like I shot my wife and then myself. . . . [F]or my insurance and our savings." Mr. Brown said that he was going to change his will to disinherit the Appellant, that the Appellant claimed "there wasn't no job around here that paid him what he's worth," and that the Appellant "needs to work."

---

[1] We note that a victim can participate in the sentencing process by submitting a written "victim impact statement" prepared by the Department of Correction as part of a defendant's presentence report, which the victims did in this case, or by giving live impact testimony at a sentencing hearing. See Tenn. Code Ann. 40-38-103(a)(2); State v. Ring, 56 S.W.3d 577, 581 (Tenn. Crim. App. 2001). Our Code does not provide for an oral victim impact statement. Defense counsel later pointed out in the hearing that he did not have an opportunity to cross-examine Mr. Brown because Mr. Brown did not testify. However, defense counsel did not object to Mr. Brown's oral statement. Therefore, to the extent the trial court considered Mr. Brown's oral statement as evidence, the trial court did not err. See State v. Ashley Donielle Wright, No. E2018-01402-CCA-R3-CD, 2020 WL 2919450, at *5 (Tenn. Crim. App. at Knoxville June 3, 2020) (concluding that trial court could consider victims' addressing trial court at sentencing because defense counsel did not object).

The State noted that "this could have easily . . . been an attempted first-degree murder charge" and that the State "would have had a good-faith basis to amend the warrants in sessions had [the Appellant] not agreed to plead guilty as charged." The State requested that the trial court consider two enhancement factors in determining the manner of service of the sentences: Factor (4), that "[a] victim of the offense was particularly vulnerable because of age or physical or mental disability," and factor (14), that "[t]he defendant abused a position of . . . private trust . . . that significantly facilitated the commission or the fulfillment of the offense." Tenn. Code Ann. § 40-35-114(4), (14). Regarding the latter factor, the State argued as follows:

> While the State will concede that simply having a, you know, father or mother and son relationship does not in and of itself create the presumption of a private trust, the Court is instructed to look at whether or not the relationship promotes confidence, reliability, or faith and whether or not it includes a degree of vulnerability.
>
> In this case, Judge, the State argues that the relationship between the defendant and his parents absolutely promoted confidence, reliability, and faith and did have a degree of vulnerability attached to it.
>
> At the time of these offenses, these victims were allowing the defendant to live in their home because he'd lost his job due to drinking on the job. The victims were in their beds. This attack was completely unprovoked.
>
> They trusted their son in their home. They never would have expected that he would pick up their gun and begin to assault them with it. He wouldn't have had the opportunity to assault them in the way that he did, had they not opened up their home to [him].
>
> He wouldn't have been able to go in their room while they were asleep and pick up Jerry Brown's gun and begin to load it unless he committed a separate offense of breaking into their home. But nonetheless, Judge, he would not have had that opportunity had they not instilled trust and faith in him and allowed him to come into their home.
>
> He took advantage of their vulnerabilities not only as parents, but their medical vulnerabilities as well. As the Court is aware, these two victims -- I believe they're both 73, 74-years-old. Jerry Brown suffers from a number of prior medical issues that are noted within his medical records.

Martha Brown in addition to her age is particularly vulnerable because of her memory loss and he took advantage of this. He absolutely used their vulnerabilities which was that they believed that their own son wouldn't come in and assault them and he attacked them. He attacked them in their bed when they were asleep. So we would ask that the Court apply this particular enhancement factor.

The State noted that the Appellant did not have any prior convictions but requested that the trial court deny his request for probation because "this was a brutal attack on two elderly parents that they never saw coming." The State asserted that confinement was necessary to avoid depreciating the seriousness of the offenses and to deter others from committing similar offenses. The State also asserted that the Appellant lacked potential for rehabilitation due to his "very longstanding problem with alcohol" and his decision to mix alcohol with sleeping pills, which resulted in his attacking the victims. Finally, the State requested that the trial court deny the Appellant's request for judicial diversion.

Defense counsel stated that the offenses in this case were "serious" and that "it was a mistake" for the Appellant to mix Ambien, alcohol, and a muscle relaxer prior to committing the crimes. However, defense counsel contended that the Appellant did not know the effect those drugs would have on the Appellant. Defense counsel noted that the Appellant was a college graduate and had "worked steadily throughout his life." Defense counsel stated that the Appellant had been "terribly distressed over what has happened" and that the Appellant had accepted responsibility for his actions by pleading guilty and by allowing the trial court to determine the manner of service of his sentences and his request for judicial diversion.

Regarding enhancement factor (14), defense counsel argued that the factor did not apply because "[h]e wasn't their parent, guardian, or even caretaker. In fact it was the other way around. He was living there with them. They were kind of taking care of him. He was [unemployed] at the time, he didn't have any money[.]" As to the need for deterrence, defense counsel noted that this was not a high profile case and that there was no proof similar crimes were "on the rise" in the community. Regarding the Appellant's potential for rehabilitation, defense counsel asserted that the Appellant wanted treatment, that the Appellant was "horrified and embarrassed by what has gone on and wants to change things," and that "[t]his is a one-time incident fueled by alcohol and medications." Defense counsel requested that the trial court grant diversion so that the Appellant, who was fifty-three years old, could "keep this off of his record so that he would be allowed to go back into the line of work which is basically a manager of safety over various companies."

The Appellant gave an allocution in which he stated that he took "full responsibility for his actions," that he loved his parents, and that they had always been very proud of him. The Appellant said that he was responsible as a child, cleaning his room and mowing the grass without being told to do so. He was the first person in his family to go to college and

worked his way through school to earn his degree. In August 2015, the Appellant resigned from a company with which he had been employed for twenty-nine years. Two weeks later, he became sick and was diagnosed with Crohn's disease. The Appellant stated that "[i]t took most of 2016 to get through that" and that he had surgery for his Crohn's disease, which resulted in blood clots. The Appellant said he was not receiving treatment for his illness while incarcerated and that "I've missed two injections now and my daily medications for four months."

The Appellant stated that he did not remember "a lot of the details" about the assaults but that "I have no doubt that the reason that this occurred was the mixture of prescription medication that being Ambien and a muscle relaxer. . . . And I was also drinking tequila." The Appellant advised the trial court that he was supposed to enter a twenty-eight-day rehabilitation program just four days after the sentencing hearing and that he would "transition into their halfway house after that to try to get myself back on my feet." He said that he understood why his parents did not want to be around him and that he would "honor those wishes." The Appellant requested that the trial court grant his requests for full probation and diversion so that he could continue with his career as an environmental health and safety manager. In closing, the Appellant stated that he was "truly sorry" and "very remorseful that this happened."

The trial court stated that this was "an incredibly difficult case" because the Appellant had no criminal history but that the circumstances of the offense were "atrocious and terrifying." The court first addressed the Appellant's request for judicial diversion, noting that the Appellant was eligible.[2] Regarding the Appellant's amenability to correction, the trial court found that the factor "cuts both ways" because the Appellant had struggled with substance abuse and mental health issues for most of his life but had earned a college degree and had maintained employment for most of his life. Next, the trial court addressed the circumstances of the offense and stated, "I just can't stress the heinous nature of this offense and how strongly that weighs on the Court's decision-making today." Third, the trial court found that the Appellant's lack of a criminal record weighed heavily in his favor. Fourth, the trial court addressed the Appellant's social history, again noting his college education and employment. However, the trial court stated that the Appellant's life recently had taken a "downturn." The trial court noted that the Appellant declared bankruptcy a few years prior to the sentencing hearing and that "[it] kind of makes you wonder if that was the beginning of this downfall that's led the [Appellant] to where he currently sits."

Fifth, the trial court addressed the Appellant's mental and physical health and found that his mental health "is certainly a concern here." The trial court noted that the Appellant was hospitalized as a teenager and experienced mental health issues again in 2016. As to

---

[2] During the hearing, defense counsel introduced into evidence the Appellant's certificate of eligibility issued by the Tennessee Bureau of Investigation (TBI).

the deterrence value to the Appellant and others, the trial court agreed with defense counsel that the case had not received much publicity. Therefore, the trial court questioned the deterrence value "on society in general." As to the deterrence value to the Appellant, though, the trial court stated that "it probably goes without saying that he shouldn't engage in behavior like this and expect to walk away from the situation with nothing on your criminal history." Finally, as to whether judicial diversion will serve the interest of the public as well as the defendant, the trial court stated, "To allow an attack such as this to go and not result in a felony conviction, I think would be really an affront to the reputation of the criminal justice system." The trial court denied the Appellant's request for judicial diversion.

As to the manner of service of the Appellant's effective six-year sentence, the trial court found that mitigating factor (13), the catchall provision, applied due to his lack of criminal history, his work as an environmental health and safety manager, his realization that he needed substance abuse treatment, and his remorse. See Tenn. Code Ann. § 40-35-113(13). The trial court agreed with the State that enhancement factors (4) and (14) also were applicable, and the trial court gave "great weight" to enhancement factor (4) regarding the victims being particularly vulnerable. As to enhancement factor (14), that the Appellant abused a position of private trust, the trial court explained,

> So when you read that language from the [Gutierrez] decision, I think there is some application here. Not just because he's their son and not just because he's living with them at age 53. I don't think that creates a per se situation that would call for the application of this factor.

> But when you take in some of the other factors that were at play, he's pretty recently divorced, he's pretty recently bankrupt, he's someone who is struggling with substance abuse. And his parents at their advanced age agreed to take him into their home, when he's north of 50-years-old, and to allow him to stay there and allow -- I mean clearly he had drugs and alcohol in the house.

> When I say drugs, were they prescription drugs? It sounds like they could have been. They had tequila there. They took him in and allowed him to be in that situation to help him out and it was because of that situation that he was able to, A, not be employed. You know, if you're working there's probably a good chance that you don't end up in this state of intoxication if you know you have to get up and go to work the next day. But also it facilitated this attack. You know, they're lying in bed. The one spot where you should feel safest of all especially when the only other person in the house is your son.

So I do think for those reasons there is some application of factor (14) although it may not be in the traditional sense of how we generally think of that factor. I think it does apply. But as [defense counsel] correctly notes, I think it does kind of meld over into the vulnerability factor so I'm not going to attach a great deal of weight to that factor, although I find that it does apply.

The trial court also found that confinement was necessary to avoid depreciating the seriousness of the offenses. The trial court stated that while there was "maybe a chance" the Appellant would rehabilitate himself, there also was the possibility that he would "relapse in the very same fashion and do something bad either to his parents or someone else or worse, or worse." The trial court stated that it was not comfortable taking a chance on the safety of others. Accordingly, the trial court denied the Appellant's request for probation and ordered that he serve his effective six-year sentence in confinement.

## II. Analysis

### A. Judicial Diversion

The Appellant contends that the trial court erred by denying his request for judicial diversion because the court did not explain why the circumstances of the offenses outweighed the other factors. The State argues that the trial court properly denied the Appellant's request for diversion. We agree with the State.

As charged in this case, aggravated assault occurs when a person knowingly commits an assault, and the assault involved the use of a deadly weapon. Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii). A person commits assault when the person knowingly causes bodily injury to another. Tenn. Code Ann. § 39-13-101(a)(1). "Bodily injury" is defined as "including a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(3). Aggravated assault is a Class C felony. Tenn. Code Ann. § 39-13-102(e)(1)(A)(ii).

Pursuant to Tennessee Code Annotated section 40-35-313(a)(1)(B)(i)(a)-(e), a defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty or nolo contendere to a Class C, D, or E felony; is not seeking deferral for an offense committed by an elected official; is not seeking deferral for a sexual offense; has not been convicted of a felony or a Class A misdemeanor previously and served a sentence of confinement; and has not been granted judicial diversion or pretrial diversion previously. Additionally, in determining whether to grant a defendant judicial diversion, the trial court must consider all of the following factors: (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the status of the defendant's physical and mental health, (6) the

deterrence value to the defendant and others, and (7) whether judicial diversion will serve the interest of the public as well as the defendant. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)).

The record must reflect that the trial court has taken all of the factors into consideration, and "we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision." Id. Furthermore, "[t]he court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others." Id. When reviewing a trial court's decision to grant or deny judicial diversion, the standard of review is abuse of discretion with a presumption of reasonableness. State v. King, 432 S.W.3d 316, 327 (Tenn. 2014). However, if the trial court failed to weigh and consider the relevant factors, this court may conduct a de novo review or remand the case for reconsideration. Id. at 328.

Turning to the instant case, the record demonstrates that the trial court took into consideration all of the Parker and Electroplating factors and explained its reasoning for denying judicial diversion. Therefore, the trial court's ruling is entitled to a presumption of reasonableness.

The trial court found that the following factors weighed against granting judicial diversion: the circumstances of the offenses, the Appellant's mental health, the deterrence value to the Appellant, and whether judicial diversion will serve the interest of the public as well as the Appellant. Additionally, the trial court found that aspects of the Appellant's amenability to correction and social history weighed against granting judicial diversion.

Regarding the circumstances of the offenses, the trial court described the aggravated assaults as "atrocious," "terrifying," and "heinous" and placed great weight on that factor. The stipulated facts at the plea hearing showed that the Appellant tried to shoot and kill his parents with his father's gun. As luck would have it, the gun did not fire. Undeterred, the Appellant obtained a wooden axe handle and beat his father with it. Meanwhile, his mother, who suffered from dementia, fled for her life. When police officers arrived at the scene, they found her distraught and a block away from her home. Mrs. Brown suffered scrapes to her left leg, and photographs introduced into evidence showed a gash on Mr. Brown's forehead; an injury that appeared to be another gash on the left side of his head; and an extensive amount of blood on his left arm, his t-shirt, and the couple's bed. Therefore, we conclude that the trial court did not abuse its discretion by denying the Appellant's request for judicial diversion.

B. Probation

The Appellant contends that the trial court erred by denying his request for full probation because the trial court improperly considered enhancement factor (14) and because the trial court improperly evaluated the seriousness of the offenses. The State argues that the trial court properly denied the Appellant's request for probation. Again, we agree with the State.

This court reviews the length, range, and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); State v. Caudle, 388 S.W.3d 273, 79 (Tenn. 2012) (applying the standard to alternative sentencing). In determining a defendant's sentence, including the manner of service, the trial court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the Appellant in his own behalf; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. See Tenn. Code Ann. § 40-35-210(b); see also Bise, 380 S.W.3d at 697-98. The burden is on the Appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts.

Regarding alternative sentencing, a defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). The Appellant's sentences meet this requirement. Moreover, a defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). In the instant case, the Appellant is considered to be a favorable candidate for alternative sentencing because he is a standard offender.

The following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), may constitute "evidence to the contrary":

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). Additionally, a court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. See Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

The Appellant first claims that the trial court erred by finding that enhancement factor (14) applied to this case, explaining as follows:

> While the attack was certainly lamentable, it did not arise in any way from the exploitation of an adult who was particularly vulnerable due to the nature of a trusting relationship. To be sure, it could not have happened if [the Appellant] had not been living in his parents' home. But mere co-residence is not enough to establish this factor. See [State v. Gutierrez, 5 S.W.3d 641, 645 (Tenn. 1999)]. That is all that was shown here. There was not further evidence before the court that his parents had an unusual level of trust in him or that any such trust contributed to this offense.

In Gutierrez, our supreme court recognized that in cases where an "adult perpetrator and minor victim are members of the same household, the adult occupies a position of 'presumptive private trust' with respect to the minor." Id. However, the court determined that a presumption of a private trust does not exist in cases where the perpetrator and the victim are both competent adults who share a household or are in a relationship because, unlike minor victims, adult victims generally have reasonable judgment and can function independently. Id. Accordingly, trial courts must examine "'the nature of the relationship'" to determine "whether that relationship 'promoted confidence, reliability, or faith'" because such a relationship "usually includes a degree of vulnerability." Id. at 646 (quoting State v. Kissinger, 922 S.W.2d 482, 488 (Tenn. 1996)). Our supreme court explained that "[i]t is the exploitation of this vulnerability to achieve criminal purposes which is deemed more blameworthy and thus . . . the enhancement factor . . . is construed to apply only where there is evidence that the nature of the relationship between the perpetrator and the adult victim caused the victim to be particularly vulnerable." Id. The State must also show "that the perpetrator abused that relationship in committing the crime." Id. Finally, our supreme court cautioned that "[a]s with all determinations regarding the application of an enhancement factor, the utilization of this analysis 'is a task that must be undertaken on a case-by-case basis.'" Id. (quoting State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997)).

Applying the foregoing analysis, our supreme court noted that Gutierrez and his girlfriend, the victim, were in a relationship and living together; he became angry when she discussed ending the relationship, and he beat her before shooting and killing her. Id. at 643. The court noted that the record contained few details concerning the nature of their

- 12 -

relationship. Id. at 646. Therefore, because the record did not demonstrate "the existence of a relationship which promoted a reliance, confidence, and faith that created a vulnerability on the part of the adult victim," the court found that the trial court erred by enhancing the defendant's sentence for his voluntary manslaughter conviction based upon an abuse of a position of private trust. Id.

Here, the trial court did not apply enhancement factor (14) based on the mere sharing of the household or the mere existence of a parent-child relationship. Instead, the trial court distinguished the facts of this case from Gutierrez, noting that the fifty-three-year-old Appellant was bankrupt, unemployed, and struggling with substance abuse prior to assaulting the elderly victims and that the victims allowed him to live with them in order to help him. Obviously, the victims did so because they trusted that the Appellant would not try to harm them. Furthermore, their trust made them vulnerable to his taking advantage of them, which he did by using alcohol and drugs in their home, by remaining unemployed, and by attacking them in their own bed. We note that in addition to both of the victims being seventy-three years old, the Appellant's mother suffered from dementia. Therefore, we agree with the trial court that the Appellant abused a position of private trust that significantly facilitated his commission of the offenses. In any event, the trial court did not give significant weight to enhancement factor (14). Thus, even if the trial court erred by considering the factor, the Appellant is not entitled to relief. See Tenn. R. App. P. 36(b).

The Appellant also claims that the trial court erred by denying his request for full probation because the trial court improperly evaluated the seriousness of the offenses. Specifically, he asserts that that the only statutory justification given by the trial court for denying probation was that confinement was necessary to avoid depreciating the seriousness of the offenses and that the trial court failed to discuss the standards announced in State v. Trent, 533 S.W.3d 282 (Tenn. 2017).

Generally, when denying alternative sentencing based on the seriousness of the offense alone, "'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring a sentence other than confinement." State v. Trotter, 201 S.W.3d 651, 654 (Tenn. 2006) (quoting State v. Grissom, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997)). In order for a trial court to deny probation solely on the basis of the offense itself, "the circumstances of the offense as particularly committed in the case under consideration must demonstrate that the defendant committed the offense in some manner more egregious than is contemplated simply by the elements of the offense." Trent, 533 S.W.3d at 292-93.

As stated previously, the trial court described these aggravated assaults as "atrocious," "terrifying," and "heinous" and considered the crimes to be more egregious than what is usually contemplated by aggravated assault involving a deadly weapon and

causing bodily injury. The stipulated facts support the trial court's assessment and justify the denial of probation. In any event, the trial court did not deny probation based solely on the circumstances of the offense. The trial court also denied probation based on the consideration of enhancement factor (4), which it gave great weight, and enhancement factor (14). Additionally, the trial court questioned the Appellant's potential for rehabilitation or treatment, stating that while there was "maybe a chance" that he would rehabilitate himself, he could "relapse in the very same fashion and do something bad either to his parents or someone else or worse, or worse." Accordingly, we conclude that the trial court did not abuse its discretion by denying the Appellant's request for full probation and by ordering that he serve his effective six-year sentence in confinement.

### III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA MCGEE OGLE, JUDGE
